**Dolen E. LINDSEY,**
**Plaintiff-Appellant, Cross-Appellee,**

v.

**AMERICAN CAST IRON PIPE COMPANY, Defendant-Appellee,**
**Cross-Appellant.**

No. 86–7198.

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1987.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant, cross-appellee.

J. Fredric Ingram, Thomas, Taliaferro, Forman, Burr & Murray, Michael L. Lucas F.A. Flowers, III, Birmingham, Ala., for defendant-appellee, cross-appellant.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge:

In a return visit to this court, Dolen Lindsey appeals the district court's denial of his claim for liquidated damages in this age discrimination suit. Lindsey's employer, American Cast Iron Pipe Company (ACIPCO), cross-appeals from the district court's award of prejudgment interest to Lindsey. We believe that the Supreme Court's opinion in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), supports both an award for liquidated damages and prejudgment interest in this case. Therefore, we reverse the denial of liquidated damages and affirm the prejudgment interest award.

Lindsey sued ACIPCO for violating the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. He alleged that ACIPCO had refused to promote him to assistant manager of its data processing department because of his age. The jury returned a verdict for Lindsey, but the district court granted ACIPCO's motion for judgment notwithstanding the verdict. On the initial appeal, this court reversed the district court, reinstated the jury verdict, and remanded the case for entry of judgment. *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir.1985) (*Lindsey I*). The district court reinstated the jury verdict and awarded Lindsey backpay with interest and injunctive relief, but it denied Lindsey liquidated damages.

I

Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides for liquidated damage awards when an employer "willfully" violates the Act. In *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court held that an ADEA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128–29, 105 S.Ct. at 625.

At trial, Lindsey presented evidence that demonstrated that when he asked about the promotion, ACIPCO's Vice President of Finance and Treasurer John Foshee said that "the company would be looking for a person younger than Lindsey." *Lindsey I*, 772 F.2d at 801. ACIPCO countered with evidence that it refused to promote Lindsey for legitimate nondiscriminatory reasons. *Id.* The jury, however, rejected ACIPCO's reasons as mere pretext[1] and credited

---

\* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The jury trial of this case proceeded under the *McDonnell Douglas* mode of proof, which requires the plaintiff to first present a prima facie case of discrimination. If the defendant presents evidence of nondiscriminatory reasons for the employment decision, the plaintiff must then prove that the defendant's articulated reasons are merely pretext or cover-up for the

discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In *Lindsey I*, we determined that although ACIPCO had attempted to present legitimate reasons, "there was sufficient evidence for the jury to find that [Lindsey had] successfully refuted ACIPCO's articulated reasons for his non-selection." *Lindsey I*, 772 F.2d at 802 n. 1.

In addition, at trial the court instructed the jury:

Lindsey's account. *Id.* at 802. The jury accordingly found that ACIPCO had intentionally discriminated against Lindsey because of his age. On the first appeal, this court held that substantial evidence supported the jury's finding. *Id.* at 801–02. In addition, the defendant admitted at trial that it knew that the ADEA prohibited employers from considering an employee's age in making employment decisions. Thus, in *Lindsey I,* this court reversed the district court's entry of judgment notwithstanding the verdict and reinstated the jury's verdict.

■ On remand, neither the plaintiff nor the defendant presented additional evidence on the willfulness issue. The district court then decided the issue, applying the *Thurston* "knowing or reckless disregard"

> Where a defendant gives specific reasons for its decision not to promote a plaintiff in a case under the Age Discrimination in Employment Act, the burden is not on the defendant to prove ... that reasons stated are the real and valid reasons for the decision. Rather, the burden is on the plaintiff to show by a preponderance of the evidence that the stated reasons are merely a pretence or cover up and that age was the determining factor in the decision not to promote the plaintiff.
>
> • • • • •
>
> The defendant as an employer is entitled to make its own subjective business judgments regarding the selection of individuals for promotion and may select any person for any reason other than the person's age or some other consideration forbidden by law. The defendant is entitled to select one qualified employee over another equally qualified employee who the employer believes in good faith that the employee selected would do a better job, so long as this belief is not a pretext for age discrimination.
>
> If you believe that the defendant did not select the plaintiff for the vacancy because it believed in good faith that the plaintiff was not the most qualified employee for the job or it did not believe that the plaintiff could adequately perform the assistant manager's job, you may not then return a verdict against the defendant.

Plaintiff's Record Excerpts at 26–28.

Because we presume that the jury followed its instructions in rendering the verdict, *see Berndt v. Kaiser Aluminum,* 789 F.2d 253, 261 (3d Cir.1986); *Klink v. Harrison,* 332 F.2d 219, 225 (3d Cir.1964), the jury must have rejected the defendant's evidence to find for Lindsey in this case.

standard. In deciding the issue, the district court relied upon ACIPCO's proffered nondiscriminatory reasons for not promoting Lindsey.[2] ACIPCO argues that Lindsey waived his right to a jury trial on the liquidated damages issue and that it was proper for the district court to decide the willfulness issue on remand.[3]

■ We need not decide whether Lindsey waived his right to a jury trial on that issue because even assuming that he did, the district court should not have denied liquidated damages. The court was not at liberty to make findings that conflicted with the jury's findings. When some issues are tried to the jury and some to the court, the jury issues generally should be heard first. Otherwise, collateral estoppel or *res judiciata* could apply and deprive

2. The district court tried to sidestep the jury's disbelief of ACIPCO's reasons by relying on the testimony of Lindsey. The court emphasized Lindsey's statements that he previously turned down a job with ACIPCO that he believed was critical. The court held that the jury had credited that testimony and, therefore, ACIPCO had legitimate reasons for the employment decision. Record on Appeal, Vol. 2, at 101–03. This finding, however, flies in the face of the jury's finding of intentional discrimination. If the jury believed that ACIPCO had truly selected another person for the job because Lindsey had turned down a previous job change, then the jury could not have found for *Lindsey.*

3. In the absence of waiver, Lindsey was entitled to a jury trial not only on the issue of liability but on the issue of damages, as well. In 1978 Congress amended the ADEA specifically to add a jury trial provision:

> a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this Act, regardless of whether equitable relief is sought by any party in such action.

29 U.S.C. § 626(c)(2) (Supp. III 1979). The Conference Committee Report on the 1978 Amendments defines the phrase "amounts owing" to include liquidated damages. *See Goodman v. Heublein, Inc.,* 645 F.2d 127, 128–29 n. 2 (2d Cir.1981) (jury trial available for factual issues underlying liquidated damages). Therefore, Lindsey was entitled to a jury trial for all factual issues of his ADEA claim, including his claim for liquidated damages.

litigants of their jury trial rights. *See, e.g., Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 508–09, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959). This principle extends to the instant case, in which the jury tried the liability issue and the court tried the damages issue. Once a jury has necessarily or actually decided an issue, the district court may not reconsider it. Moreover, "[i]t is well-settled that the 'court may not make findings' contrary to or inconsistent with the jury's resolution ... of that same issue as implicitly reflected in its general verdict...." *Craft v. Board of Trustees of the University of Illinois,* 793 F.2d 140, 143 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986) (quoting *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821, 844 (7th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979)).

██ The district court here erred as a matter of law by redeciding factual issues already necessarily determined by the jury.[4] Because the jury rejected ACIPCO's reasons for its actions as pretext for age discrimination, the court was not free to resurrect those same reasons to prove ACIPCO's "good faith."

██ In addition, by entering new findings of fact that are inconsistent with our decision in *Lindsey I,* the district court circumvented the law of the case and exceeded the mandate that issued from that decision. This court reinstated the jury verdict, and the jury's fact findings became part of our mandate.

██ Under the law of the case doctrine, a district court may not deviate from the appellate court's mandate. *See, e.g., Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir.1984); *City of Cleveland v. Federal Power Comm'n,* 561 F.2d 344, 348 (D.C.Cir.1977); *see also* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[10] (2d ed. 1983). A district court, however, may reconsider an issue and disregard the appellate mandate when "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Wheeler,* 746 F.2d at 1440 (quoting *United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982)).

██ The district court here could not circumvent the general law of the case principle, notwithstanding the fact that the Supreme Court opinion in *Thurston* changed the legal standard for determining whether to award liquidated damages. The Court decided *Thurston* after the district court initially tried this case. The decision did not alter the facts already determined by the jury. While the district court could have empanelled a new jury or heard additional evidence on its own, it did not do so and neither of the parties offered additional evidence on the willfulness issue.

---

4. The district court interpreted *Thurston* to bar liquidated damages if:

> an employer acts reasonably and in good faith which in this context the court interprets to mean that if there are other reasons unrelated to race (sic) which would have led to the same decision and the court finds that the employer relied in part on those other reasons, then the employer is not subject to liquidated damages. Record on Appeal, Vol. 2, at 93.

Apparently, the district court believed that if the employer had reasons unrelated to age for the employment decision, then the employer might not think that it was discriminating on the basis of age. Consequently, the employer would not know that its actions violated the ADEA. Since a court may only impose liquidated damages for willful violations, the employer could not then be subject to liquidated damages. But here, applying the standard as the district court interpreted it, there was no basis for a finding of good faith. The district court had instructed the jury that they could not find for Lindsey if they found that the employer "believed *in good faith* that the plaintiff was not the most qualified employee for the job." Plaintiff's Record Excerpt at 28. By returning a verdict for Lindsey, the jury necessarily rejected any notion that ACIPCO "believed in good faith" any of the nondiscriminatory reasons on which it purported to rely. Accordingly, there were no other credited reasons unrelated to age that would have led to the same employment decision. The jury did not believe the reasons that ACIPCO presented.

Instead, the court applied the *Thurston* standard to its own, new findings of fact that were inconsistent with the facts established by the jury verdict and the first appeal. By thus resurrecting discredited testimony, the district court violated the mandate of *Lindsey I.*

■ Applying the *Thurston* standard for liquidated damages to the jury's fact findings, we hold that Lindsey is entitled to liquidated damages. The jury found that ACIPCO intentionally discriminated against Lindsey because of his age and that its "legitimate" reasons for its decision were merely pretext for the discrimination. In addition, the defendant admitted at trial that it knew the ADEA prohibited consideration of an employee's age in making employment decisions.[5] Together these facts satisfy the strictest prong of the *Thurston* willfulness standard: the employer *knew* that its conduct violated the ADEA. Thus, no danger exists in this case of imposing liquidated damages upon an employer who made a good faith effort to comply with the ADEA.

The Supreme Court tightened the liquidated damages standard to avoid imposing them in every case. In *Thurston*, the Court examined the legislative history of the ADEA to ascertain the appropriate threshold for liquidated damages awards. 105 S.Ct. at 624–25. The Court rejected the more lenient "in the picture" standard applied in FLSA liquidated damages cases and adopted the somewhat stricter "knew or showed reckless disregard" standard. *Id.* The Court explained that the lesser standard "would allow the recovery of liquidated damages even if the employer acted reasonably and in complete 'good faith.' Congress hardly intended such a result."

Id. at 625 n. 22. On the other hand, the Court refused to require evil motive, bad purpose, or intent to violate the ADEA. *Id.* at 624 n. 19. The *Thurston* standard falls somewhere between automatic recovery of liquidated damages and recovery limited only to aggravated circumstances.

■ The *Thurston* Court applied the new standard to TWA's retirement plan in a disparate impact situation. *Id.* at 625–26. The standard is easier to apply in such a case because there is no initial finding of intentional discrimination. *See, e.g., Kossman v. Calumet County*, 800 F.2d 697, 702 (7th Cir.1986) (Attorney General warned county of illegality of its retirement policy—clear case of knowing violation); *Whitfield v. City of Knoxville*, 756 F.2d 455 (6th Cir.1985) (good faith belief that ADEA could not constitutionally apply to city's retirement policy—no liquidated damages). Unfortunately, courts are finding the standard less helpful in disparate treatment cases, such as the instant one. For example, in *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 657 (3rd Cir.1986), the Third Circuit explained, "There is a danger that use of the 'knew or reckless disregard' standard for a discrete employment decision that has been made on the basis of age would in effect allow the recovery of liquidated damages any time there was a violation of the Act." The Third Circuit sought to distinguish between intentional and willful violations of the ADEA to avoid imposing double damages in almost every disparate treatment case. *Id.* Relying upon section 908(2) of the *Restatement (Second) of Torts*, the court modified the *Thurston* standard to require "outrageous" conduct to recover liquidated damages in disparate

---

5. Joseph P. Doughty, Jr., who was, at the time of the employment decision, Assistant Treasurer and Controller of ACIPCO, testified on cross-examination:

Q: You were aware, were you not, at the time the decision was being made that it was discriminatory to consider someone's age in making a decision, weren't you?
A: Yes.
Q: And you knew about this Act that said you couldn't do that, didn't you?

A: Yes. I'm aware of that.
Q: And you know that [the other ACIPCO officers involved in the decision] also knew about the Act?
A: Yes.
Supplemental Record on Appeal, Vol. 2, at 258.
At oral argument, Lindsey's counsel distinguished this knowledge from the old "in the picture" standard, because here, at the moment the employer made the decision, he knew that discrimination was not permitted.

treatment cases. *Id.* The court declined to impose liquidated damages in *Dreyer,* where ARCO was implementing a reduction-in-force plan and Dreyer did not contend that her job was eliminated as a pretext to terminate her employment. *Id.* at 658. The Third Circuit, in struggling to understand the Supreme Court's intentions, attempted to distinguish between "willful" and "intentional." This sort of difficulty led that court to further modify the standard to make some sense of the conflicting messages from the *Thurston* opinion.

The Third Circuit is not alone in its frustration with the *Thurston* standard. We find the knowing or reckless disregard standard difficult to reconcile with the admonition to avoid imposing liquidated damages in every case, at least in the context of disparate treatment cases. The *Thurston* opinion leaves the courts wrestling with the liquidated damages issue. There is no logical way to square a finding of intentional discrimination with a finding of good faith on the employer's part.

While we acknowledge the awkwardness of the *Thurston* standard in a disparate treatment case, we decline to adopt the Third Circuit's modification. In fact, at oral argument ACIPCO's counsel conceded that *Thurston* did not require a showing of outrageous conduct. The Supreme Court specifically rejected the stringent "intentional" violation standard. 469 U.S. at 126 n. 19, 105 S.Ct. at 624 n. 19. On the other hand, we hesitate to hold that every plaintiff who wins in the liability phase of a *McDonnell Douglas* age discrimination case should automatically receive liquidated damages. The Supreme Court cautioned against awarding liquidated damages in every case. Instead, we hold only that on the facts of this case, the jury's finding of intentional discrimination determined pursuant to the instruction given the jury concerning good faith coupled with defendant's admission of knowledge that the ADEA prohibited such discrimination precluded a finding of good faith. *See Galvan v. Bexar Co.,* 785 F.2d 1298, 1307 (5th Cir.), *reh'g denied,* 790 F.2d 890 (1986) (district court's finding of willfulness for

liquidated damages not clearly erroneous when age was the explicit reason for employment decision); *Real v. Continental Group, Inc.,* 627 F.Supp. 434, 445 (N.D.Cal. 1986) (sufficient evidence of intentional discrimination plus knowledge of ADEA supports jury's finding of willfulness—liquidated damages appropriate). *Contra McNeil v. Economics Laboratory,* 800 F.2d 111, 117 (7th Cir.1986) (although district court found substantial evidence of discriminatory intent plus knowledge of ADEA, it denied liquidated damages—holding not clearly erroneous). The case at bar is not one in which the jury declined to find willfulness after finding intentional discrimination. We express no opinion on whether our holding would be the same if this case were in that procedural posture.

The Fifth Circuit recently awarded liquidated damages in a similar case, *Powell v. Rockwell International, Inc.,* 788 F.2d 279, 285–87 (5th Cir.1986). In *Powell,* the employee claimed that Rockwell fired him because he had filed an ADEA suit. *Id.* at 282. Rockwell argued that it terminated Powell because he had removed a document from the plant without Rockwell's authorization. *Id.* The jury, however, rejected this argument as pretext for age discrimination. *Id.* at 283. Even though the district court applied a less stringent, pre-*Thurston* willfulness standard in awarding liquidated damages, the Fifth Circuit held it was harmless error. The court explained the jury had necessarily found willfulness when it rejected Rockwell's argument:

> [T]he only question before the jury was whether Powell was discharged for violating company policy, or whether he was discharged for filing his ADEA claim. Because the jury specifically found that Powell was discharged for filing the ADEA claim, there exists no possibility of any good faith action upon which Rockwell can rely to avoid liquidated damages. In other words, any assertion that Rockwell acted in good faith in terminating Powell and that its actions were not in reckless or knowing violation of

the ADEA was rejected by the jury when the jury found that the justifications for firing Powell offered by Rockwell were pretextual.

*Id.* at 286–87 n. 6; *see also Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 n. 6 ("an employer's action if taken *because of* an impermissible factor such as age, cannot be the result of negligence, mistake, or other innocent reason.").

The instant case is even stronger. Add to the jury's rejection of ACIPCO's justifications the admission that ACIPCO knew that the ADEA barred employment decisions based upon age, and the result is an employer who knew that the ADEA prohibited its actions. ACIPCO's actions satisfy the "willfulness" requirements of *Thurston* and entitle Lindsey to liquidated damages.

## II

While the district court refused to impose liquidated damages, it did award prejudgment interest to Lindsey. ACIPCO cross-appeals this award and argues that prejudgment interest cannot be awarded under the ADEA. Lindsey counters that not only is prejudgment interest available under the ADEA, it remains available even when a court awards liquidated damages.

■ We find ACIPCO's extreme position unpersuasive. ACIPCO argues that because Congress incorporated the procedures and remedies of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, into the ADEA, *see Lorillard v. Pons*, 434 U.S. 575, 580–84, 98 S.Ct. 866, 869–72, 55 L.Ed.2d 40 (1978), a court should consider FLSA cases to determine whether it may award prejudgment interest. In this circuit a plaintiff may not recover prejudgment interest in a private FLSA action. *See, e.g., Barcellona v. Tiffany English Pub*, 597 F.2d 464, 469 (5th Cir.1979); [6] *see also Hill v. J.C. Penney Co.*, 688 F.2d 370, 375 n. 4 (5th Cir.1982).

■ ACIPCO's argument, however, disregards the difference in the language of the FLSA section on damages and the ADEA's provisions. *See Thurston*, 469 U.S. at 125, 105 S.Ct. at 624 ("the remedial provisions of [FLSA and ADEA] are not identical"). The FLSA section provides only for an award of "unpaid minimum wages, or their unpaid overtime compensation ... and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The ADEA differs, "empowering the district court to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation, judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. § 626(b); *see also Lorillard*, 434 U.S. at 581, 98 S.Ct. at 870 (Congress followed different course with ADEA—allowing equitable relief in *any* action to enforce). These variations suggest that Congress intended a different range of remedies under the ADEA.

In addition, a number of circuits, including this one, have acknowledged the availability of prejudgment interest awards under the ADEA. *See, e.g., O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1552 (11th Cir.1984); *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190, 1200 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556–57 (9th Cir.1983), *aff'd on other grounds*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). Thus, we find that prejudgment interest is available as a remedy in ADEA cases and that the district court did not abuse its discretion by awarding prejudgment interest.

In reversing the district court's denial of liquidated damages, we confront the issue of whether a plaintiff may recover both liquidated damages and prejudgment interest under the ADEA. In *O'Donnell v.*

---

**6.** *See Bonner v. City of Prichard*, 661 F.2d 1206, 1206 (11th Cir.1981) (adopting Fifth Circuit cases prior to September 30, 1981 as precedent for Eleventh Circuit cases).

*Georgia Osteopathic Hospital,* this circuit held that an award of both prejudgment interest and liquidated damages constituted a double recovery and thus was not allowable under the ADEA. 748 F.2d at 1552. This court reasoned that under 29 U.S.C. § 626(b) of the FLSA, liquidated damages represent compensation for delay in payment of amounts owing. *Id.* Because the ADEA incorporates the liquidated damages provision of the FLSA, we held that ADEA liquidated damages are also compensatory. *Id.* Because prejudgment interest also serves to compensate, this court concluded that allowing both prejudgment interest and liquidated damages would enable a plaintiff to recover twice for the same losses. *Id.*

 Since this circuit's decision in *O'Donnell,* however, the Supreme Court decided *Thurston.* In that case, the Court read the legislative history of the ADEA to "indicate[ ] that Congress intended for liquidated damages to be punitive in nature." 469 U.S. at 125, 105 S.Ct. at 624. Liquidated damages under the ADEA are different in kind from those available under the FLSA. ADEA liquidated damages awards punish and deter violators, while FLSA liquidated damages merely compensate for damages that would be difficult to calculate.[7] Therefore, awarding both prejudgment interest and liquidated damages in an ADEA case does not constitute double compensation.

In light of the *Thurston* decision, the portion of *O'Donnell* that bars recovery of both liquidated damages and prejudgment interest under the ADEA is no longer the law. In the instant case, the prejudgment interest award may stand, in addition to an award of liquidated damages.

For the foregoing reasons, we REVERSE the district court's decision to deny liquidated damages and award liquidated damages to the plaintiff. We AFFIRM the award of prejudgment interest.

VANCE, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion of the panel majority in all respects except as to the award of prejudgment interest, from which I dissent.

Congress has explicitly stated that amounts owing under the ADEA are deemed to be amounts owing under the FLSA. *See* 29 U.S.C. § 626(b); *O'Donnell v. Georgia Osteopathic Hospital,* 748 F.2d 1543, 1552 (11th Cir.1984). It is settled that an award of both prejudgment interest and liquidated damages represents a double recovery under the FLSA. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1944); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 469 (5th Cir.1979); *Foremost Dairies v. Ivey,* 204 F.2d 186, 190 (5th Cir.1953). I can fathom no reason for treating the successful ADEA plaintiff differently from his FLSA counterpart with respect to liquidated damages and prejudgment interest.

---

**7.** Only the Ninth Circuit has recognized the different functions of prejudgment interest and liquidated damages and has allowed simultaneous recovery of both. *See Criswell v. Western Airlines,* 709 F.2d at 556–57. Other circuits that have considered the question had concluded, as we did in *O'Donnell,* that liquidated damages and prejudgment interest were both compensatory and thus not simultaneously recoverable. *See Blim v. Western Elec. Co.,* 731 F.2d 1473, 1479–80 (10th Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); *Rose v. National Cash Register Corp.,* 703 F.2d 225, 230 (6th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1101–03 (8th Cir. 1982); *Kolb v. Goldring, Inc.,* 694 F.2d 869, 875 (1st Cir.1982); *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1114 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981).

The *Thurston* decision, however, confirms the Ninth Circuit's approach in *Criswell* and undermines the assumptions of the other circuits' decisions, including ours in *O'Donnell. See Bonura v. Chase Manhattan Bank, N.A.,* 629 F.Supp. 353, 363–66 (S.D.N.Y.1986) (*Thurston* clarifies "that prejudgment interest does not provide a double recovery to victims of age discrimination who have proven their entitlement to liquidated damages as well as backpay.").